K N ENERGY, A DIVISION OF KINDER MORGAN, INC., APPELLEE, V.
VILLAGE OF ANSLEY AND CITIES OF BURWELL, LOUP CITY, ORD,
BROKEN BOW, AND RAVENNA, MUNICIPAL CORPORATIONS
OF THE STATE OF NEBRASKA, APPELLANTS.

663 N.W.2d 119

Filed June 20, 2003. No. S-02-385.

David A. Hecker, of Kutak Rock, L.L.P., for appellants.

M.J. Bruckner, of Bruckner Law Firm, P.C., Stephen M.
Bruckner and Heidi L. Evatt, of Fraser, Stryker, Meusey, Olson,
Boyer & Bloch, P.C., and B.J. Becker and William M. Lopez, of
Kinder Morgan, Inc., for appellee.

WRIGHT, GERRARD, STEPHAN, MCCORMACK, and
MILLER-LERMAN, JJ.

STEPHAN, J.

This appeal presents issues of law regarding how and when a municipality may initiate a proceeding for a review and possible adjustment of rates under the Municipal Natural Gas Regulation Act (MNGRA), Neb. Rev. Stat. §§ 19-4601 to 19-4623 (Reissue 1997).

## FACTS

The material facts are uncontested. K N Energy (KNE) is a division of Kinder Morgan, Inc., a Kansas corporation authorized to do and doing business in the State of Nebraska. KNE is a public utility engaged in the retail sale and distribution of natural gas in various parts of Colorado, Nebraska, and Wyoming. The Village of Ansley and the Cities of Burwell, Loup City, Ord, Broken Bow, and Ravenna (the municipalities) are municipal corporations and political subdivisions of the State of Nebraska. Each of the municipalities is located in KNE's rate area 7, established pursuant to the MNGRA. See § 19-4606.

On February 24, 1998, the City of Broken Bow adopted the following resolution:

BE IT HEREBY RESOLVED that the City of Broken Bow, Nebraska, intends to review the gas rates of KN Energy for possible rate adjustment pursuant to Neb. Rev. Stat. section 19-4618.

BE IT HEREBY FURTHER RESOLVED that the City of Broken Bow, Nebraska, will contact other municipalities in the rate area to determine whether they are interested in cooperative efforts.

BE IT FURTHER RESOLVED that the City of Broken Bow, Nebraska, will contact the Nebraska Energy Office to seek funding from the Municipal Natural Gas Regulation Revolving Loan Fund.

On March 2, 1998, the City of Ord adopted resolution No. 692, providing:

BE IT HEREBY RESOLVED that the City of Ord, Nebraska, fully supports the efforts of Broken Bow to review the gas rates of KN Energy for possible rate adjustment pursuant to Neb. Rev. Stat. section 19-4618.

BE IT HEREBY FURTHER RESOLVED that the City of Ord, Nebraska, will join with Broken Bow and other interested municipalities in rate area 7 to make this review a cooperative effort.

BE IT FURTHER RESOLVED that the City of Ord, Nebraska, hereby directs Broken Bow, Nebraska to contact the Nebraska Energy Office to seek funding from the Municipal Natural Gas Regulation Revolving Loan Fund.

BE IT FURTHER RESOLVED that this Resolution is contingent on 70% of the meters in rate area 7 joining with Broken Bow.

While the record is somewhat unclear on this point, the parties assert in their appellate briefs that after the adoption of these resolutions, KNE prepared a document entitled "Preliminary Revenue Requirements and Rate Study for Retail Natural Gas Service in Rate Area 7" which it submitted to the City of Broken Bow. Again, while the record is somewhat unclear, the parties agree in their briefs that no further action was taken pursuant to either of the 1998 resolutions.

Between February 10 and April 13, 1999, six of the municipalities in rate area 7, including Ord and Broken Bow, adopted resolutions initiating rate reviews. In December 1999, municipalities in rate areas 2, 3, 4, and 7 conducted rate area hearings pursuant to the 1999 resolutions. Eventually, each of the appellant municipalities adopted ordinances which prohibited KNE from recovering certain "above-market" costs of what is known as its P-0802 Contract. KNE then brought this action for declaratory and injunctive relief. KNE alleged that the rate ordinances adopted pursuant to the 1999 resolutions were invalid on various grounds, including a claim that Broken Bow and Ord violated § 19-4618 by initiating rate reviews more than once within a 36-month period.

KNE filed a motion for summary judgment, and the municipalities filed a motion for partial summary judgment. In an order entered on January 5, 2001, the district court sustained KNE's motion for summary judgment in part, concluding that as to rate area 7, the 1998 resolution adopted by Broken Bow triggered the 36-month limitation period under § 19-4618 with respect to all

municipalities in rate area 7, thereby invalidating the subsequent ordinances enacted pursuant to the rate review initiated by the 1999 resolutions. In a subsequent order, the district court declared each of the rate area 7 ordinances a nullity and permanently enjoined the municipalities from enforcing them. Following a denial of their motion for new trial, the municipalities initiated an appeal, which was dismissed pursuant to Neb. Ct. R. of Prac. 7A(2) (rev. 2000). *KN Energy v. Village of Ansley*, 10 Neb. App. liii (No. A-01-1034, Dec. 10, 2001). On remand, the district court directed an entry of final judgment pursuant to Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2002) with respect to the claims involving rate area 7, and the municipalities perfected this timely appeal.

## ASSIGNMENTS OF ERROR

The municipalities assign that the district court erred in granting KNE's motion for summary judgment, denying their motion for new trial, and denying their motion to set for trial.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2002); *Soukop v. ConAgra, Inc.*, 264 Neb. 1015, 653 N.W.2d 655 (2002); *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Finch v. Farmers Ins. Exch.*, 265 Neb. 277, 656 N.W.2d 262 (2003).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *In re Change of Name of Davenport*, 263 Neb. 614, 641 N.W.2d 379 (2002); *Newman v. Rehr*, 263 Neb. 111, 638 N.W.2d 863 (2002).

## ANALYSIS

 The authority of the municipalities to regulate rates charged by KNE is derived solely from the MNGRA. The issue presented in this case is whether, as a matter of law, the adoption of the 1998 resolutions by Ord and/or Broken Bow precluded the 1999 initiation of rate reviews in rate area 7, which resulted in the challenged ordinances. The pertinent provision of the MNGRA is the first sentence of § 19-4618(1), which provides: "Once in any thirty-six-month period, one or more municipalities in each rate area may initiate a proceeding for a review and possible adjustment in rates to conform such rates to the standards of section 19-4612 by the introduction of a resolution for such purpose." In applying this statute, we are guided by certain general principles. Statutes granting powers to municipalities are to be strictly construed. *Fitzke v. City of Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998). To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003); *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Henderson v. Henderson*, 264 Neb. 916, 653 N.W.2d 226 (2002). It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002).

Under the clear and unambiguous language of § 19-4618(1), a municipality initiates "a proceeding for a review and possible adjustment in rates . . . *by the introduction of a resolution for such purpose.*" (Emphasis supplied.) The municipalities argue that the resolutions adopted by Ord and Broken Bow in 1998 did not operate to initiate rate reviews because they were contingent upon the participation of other municipalities. The municipalities' argument as to the Ord resolution is that because the

70-percent participation was never achieved, the resolution never became operative. The district court acknowledged that the contingent language in Ord's resolution *may* not have initiated a review proceeding. Unlike the Ord resolution, however, the resolution adopted by Broken Bow in 1998 was not contingent upon the participation of any other municipality. That resolution states only that "the City of Broken Bow, Nebraska, will contact other municipalities in the rate area to determine whether they are interested in cooperative efforts."

Broken Bow clearly had statutory authority to initiate a rate review of its own accord, in that § 19-4618(1) authorizes "one or more municipalities in each rate area" to initiate a review. The municipalities urge us to view the language of the 1998 Broken Bow resolution in the light most favorable to them. They argue that while the 1998 Broken Bow resolution did not use the express contingency language of the 1998 Ord resolution, it did state that Broken Bow intended to contact the Nebraska Energy Office to seek funding from the Municipal Natural Gas Regulation Revolving Loan Fund (Fund). Section 19-4618(2) provides in relevant part:

> If appropriate resolutions are adopted by municipalities representing *seventy percent or more* of the customers in the rate area initiating a proceeding for review and possible adjustment of natural gas rates, the applicant representing the largest number of customers *shall* be given a loan for such purposes upon the terms of section 19-4617.

(Emphasis supplied.) The municipalities contend that the intent of the 1998 Broken Bow resolution was to determine whether or not sufficient interest existed among the other rate area 7 municipalities in order to ensure that Broken Bow would receive a loan from the Fund before it decided whether to initiate a review. No such intention, however, can be reasonably inferred from the language used by Broken Bow. The resolution unequivocally stated that Broken Bow would (1) review gas rates pursuant to § 19-4618, (2) contact other municipalities about cooperating in this effort, and (3) contact the Nebraska Energy Office to seek funding. None of these undertakings were stated as being contingent upon another, or upon any other event or occurrence. Accordingly, we agree with the district court that

the 1998 Broken Bow resolution initiated a rate review proceeding pursuant to § 19-4618(1).

The municipalities argue that if the 1998 Broken Bow resolution is so construed, the rate ordinance subsequently adopted by Broken Bow on April 25, 2000, should be deemed to relate back to the 1998 resolution. This argument would require us to ignore the existence of a 1999 Broken Bow resolution initiating the rate proceeding which resulted in the adoption of its 2000 rate ordinance. We agree with the district court that to construe the 2000 ordinance as relating back to the 1998 resolution, as the municipalities urge, would circumvent the clear and unambiguous language of § 19-4618(1), which authorizes a municipality to initiate rate review proceedings only "[o]nce in any thirty-six-month period."

Finally, the municipalities contend that the 1998 Broken Bow resolution cannot operate to invalidate the rate ordinances adopted by other municipalities in rate area 7 pursuant to rate reviews initiated in 1999. They argue for a construction of § 19-4618(1) which would permit *each* municipality in a rate area to initiate one rate review proceeding in any 36-month period. The Legislature could have so provided, but it did not. By providing that "[o]nce in any thirty-six-month period, one or more municipalities in each rate area" may initiate a rate review proceeding, the Legislature clearly and unambiguously stated that there could be no more than one rate review proceeding in each rate area in any 36-month period, regardless of whether such proceeding was initiated by one, some, or all of the municipalities in the rate area.

The municipalities argue that this reading of the statute produces an unfair result for other municipalities in rate area 7 in view of the fact that Broken Bow did not conduct a "substantive review" pursuant to its 1998 resolution. Brief for appellants at 18. Where, as here, a statutory grant of regulatory authority to a municipality is clear and unambiguous, it is not our role to assess the fairness of that directive. Section 19-4618(1) imposes a limit on the frequency with which rate review proceedings may be initiated without regard to the outcome of any such proceeding. We have no basis upon which to alter that aspect of the regulatory structure created by the MNGRA.

■ We do not reach the municipalities' argument that § 19-4618(1) is unconstitutional. The municipalities did not challenge the constitutionality of § 19-4618(1) in their answer to the operative third amended petition, and the issue was therefore not considered by the district court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Capitol City Telephone v. Nebraska Dept. of Rev.*, 264 Neb. 515, 650 N.W.2d 467 (2002).

## CONCLUSION

For the reasons discussed herein, we conclude that the district court did not err in determining that the rate proceedings initiated in 1999 by municipalities in rate area 7, including Ansley, Broken Bow, Burwell, Loup City, Ord, and Ravenna, were unlawful under § 19-4618(1) because they were initiated within 36 months of the 1998 proceeding initiated by Broken Bow. Accordingly, the district court did not err in declaring the resulting rate ordinances to be void and permanently enjoining their enforcement.

AFFIRMED.

HENDRY, C.J., and CONNOLLY, J., not participating.