HENRY MISLE AND BRYAN MISLE, APPELLANTS, V.
HJA, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

674 N.W.2d 257

Filed February 6, 2004.   No. S-02-445.

James F. Cann, of Domina Law, P.C., for appellants.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., and, on brief, Michael C. Cox, Allen E. Daubman, and Matthew D. Maser, of Koley Jessen, P.C., L.L.O., for appellees HJA, Inc., and Estate of Abram Misle.

David S. Houghton and J.P. Sam King, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellee Julius Misle.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Henry Misle (Misle) and his brothers, Abram Misle (Abram) and Julius Misle (Julius), were the sole stockholders of HJA, Inc., a Nebraska corporation which owned and operated several automobile dealerships in Lincoln, Nebraska. In 1990, the parties entered into a written agreement whereby the corporation could

acquire Misle's stock, as well as dealership franchises held by Misle and his son Bryan Misle (Bryan), in exchange for certain cash payments. This litigation, commenced in 1991, involved various claims that the 1990 agreement was breached. Many of the claims have been resolved, and by 1997, HJA, the estate of Abram, and Julius had paid or were current on all amounts due under the agreement. However, a dispute remained as to whether they were liable under the agreement to Misle and Bryan for state and federal taxes, penalties, and interest associated with payments which had not been made in a timely manner. That dispute is the subject of this appeal.

## FACTS

In March 1990, Misle, Bryan, HJA, Abram, and Julius entered into a contract designated as an "Exclusive Option Agreement" and a second agreement which the parties refer to as a "Side Letter Agreement." The record reflects that these documents constitute a single unambiguous agreement, and we hereinafter refer to them as "the agreement." Under the terms of the agreement, Abram, Julius, and HJA were given an option to purchase Misle's shares of HJA stock in exchange for an option payment to Misle. This provision is referred to in the record as the "buyout." The agreement also included a covenant by Misle not to compete with HJA and its related entities, for which Misle was to receive a specified sum payable in 120 equal monthly installments. The buyout option was exercised, and between March 15, 1990, and January 1991, pursuant to the agreement, certain payments were made to or on behalf of Misle. After that time, however, HJA, Abram, and Julius stopped making payments directly to Misle, although they did continue to pay certain debts held in Misle's name.

On January 21, 1991, Misle and Bryan filed this action for breach of contract in the district court for Lancaster County, naming HJA, Abram, and Julius as defendants (hereinafter collectively the defendants). Abram died during the pendency of the suit, and the action was thereafter revived to join the personal representative of his estate. A bench trial was held in 1996. On January 7, 1997, the district court entered a "Modified Memorandum Opinion and Judgment" (modified judgment), resolving significant portions of the dispute. The court found that the defendants had breached the

terms of both the buyout and the related covenant not to compete. It ordered that certain specified sums be paid to Misle as a result of those breaches. In the court's analysis of the evidence presented at trial, it noted that

> even though the defendants discontinued direct payments to [Misle and Bryan] . . . under the agreement, they did continue for a period of time to make payments on outstanding indebtedness under the "non-compete" clause. As a side issue to this, the evidence would also show that as a consequence of these payments, federal tax forms were issued by HJA to [Misle] showing income to him for the various years in which payments were made. In turn, this resulted in federal and state assessment of taxes based on this income for the years involved, and upon the failure of the payment of those taxes, interest and penalties were assessed against [Misle]. Direct evidence with regard to this matter shows that [Misle] was unable to pay the taxes because of the failure of the defendants to provide the income to him as contemplated in the [noncompete clause]. The evidence would also show that the exact amount of taxes, penalties and interest are presently unknown, those matters being in litigation in the federal courts at the time of trial.

The court specifically found that

> the failure of the defendants to perform their obligations under [the agreement] has resulted in certain federal and state tax penalties and interest being charged against . . . Misle, the exact amount of which is unknown at this time. . . . Misle . . . is entitled to recover all such penalties and interest attributable to the failure of the defendants to perform. Because of the pending litigation, which will be completed following the date of this opinion, judgment should be granted to . . . Misle . . . on this issue, but any determination of the exact amount due should be separated and reserved for final determination by this Court after final settlement of the pending litigation in the federal courts.

The district court concluded that

> judgment should be and is entered in favor of . . . Misle . . . for all federal and state tax penalties and interest assessed against him which are attributable to the defendants . . . .

Further, that the determination of the exact amount due for said penalties and interest should be reserved for final determination in a separate proceeding after final settlement of pending litigation of this matter in the federal courts.

The district court subsequently held that the modified judgment was not a final order because it did not completely dispose of all pending issues, and the remaining disputed issues as to "the amount of tax interest and penalty to be assessed as damages" could therefore be resolved in this action.

On October 16, 2000, the U.S. Tax Court filed its memorandum No. 2000-322, which resolved the amount of federal taxes and penalties owed by Misle and his wife for the years 1989 through 1996, inclusive. The primary issue addressed by the Tax Court was whether payments made by the defendants, which were applied to certain of Misle's debts, constituted income which was taxable to Misle and deductible by the defendants. The Tax Court concluded that the payments did constitute taxable income and assessed an "accuracy-related penalty" for Misle's failure to report the payments as income in tax years 1989 through 1994, inclusive, and 1996. The Tax Court rejected Misle's argument that the payments were not income to him because he was not the primary obligor on the debts. The findings of the Tax Court did not reflect any claim by Misle that he was unable to report the income or unable to pay taxes on the income because of failure by the defendants to honor the terms of the agreement.

The Tax Court also assessed penalties for Misle's failure to file a tax return in 1995 and for his failure to make estimated payments in 1995. In doing so, the Tax Court rejected Misle's argument that he was unable to file a 1995 tax return because he could not calculate the value of certain stock transactions. These transactions were entirely unrelated to the agreement. The Tax Court's final decision found Misle and his wife liable for the following amounts of federal taxes: for tax year 1989, taxes due of $19,906 and a penalty of $3,981; for tax year 1990, taxes due of $24,823.47 and a penalty of $4,965; for tax year 1991, taxes due of $72,172 and a penalty of $14,434; for tax year 1992, taxes due of $17,473 and a penalty of $3,495; for tax year 1993, taxes due of $25,173 and a penalty of $5,035; for tax year 1994, taxes

due of $60,196 and a penalty of $11,887; for tax year 1995, taxes due of $60,631 and a penalty of $18,353; for tax year 1996, taxes due of $64,217 and a penalty of $12,843.

On May 1, 2001, Misle and Bryan filed an amended petition in the district court. This petition alleged that the agreement contained the following provision:

> "We specifically agree that if the federal and state income taxes (associated with these payments) shall be due prior to the scheduled receipt of such payment, e.g. such loans being accelerated or refinanced at a different bank, or if taxing authorities require recognition of all such payments as income prior to their receipt by [Misle], or for any other reason, then the amounts due under . . . the Agreement shall be accelerated and become due at such time."

The amended petition then alleged that in the 1997 modified judgment, the court entered judgment "in favor of [Misle and Bryan] for all federal and state tax penalties and interest assessed against . . . Misle attributable to the Defendants for breach of the agreement." The petition thereafter set forth the sums of taxes and penalties found by the Tax Court for the years 1990 through 1996, inclusive, and noted that state taxes and penalties had not yet been determined. It prayed that "partial judgment be entered in favor of [Misle and Bryan]" for the entire amount of sums found to be due by the Tax Court for the years 1990 to 1996, inclusive; federal taxes and interest for the years 1997 and 1998; interest on federal taxes and penalties for the years 1990 through 1998, inclusive; and state taxes, penalties, and interest for the years 1990 through 1998, inclusive.

In their answer, HJA and the estate of Abram admitted that the district court had ruled that Misle was entitled to tax penalties and interest which were attributable to HJA and the estate of Abram's failure to perform under the agreement, but denied that they had any liability for the actual tax deficiencies at issue. HJA and the estate of Abram further alleged that they were liable for only "those penalties and interest, if any, which [were] attributable" to their breach of the agreement.

With the issues thus joined, HJA and the estate of Abram filed a motion for summary judgment asserting, inter alia, that they had "no liability for any tax deficiencies claimed by . . . Misle"

and "no liability for any penalties or interest as . . . Misle's incurrence of the same were not attributable to any breach of contract by Defendants." A hearing on the motion was held on October 24, 2001, before a judge to whom the case had been reassigned subsequently to the 1997 modified judgment. The court received evidence in support of and in opposition to the motion, and took judicial notice of the pleadings filed in 2001. On November 26, the district court granted partial summary judgment in favor of HJA and the estate of Abram. In this order, the district court found that the taxes and penalties assessed by the Tax Court for the years 1990 through 1996, inclusive, were attributable to Misle's failure to report the debt payments as income and his failure to file a tax return in 1995. Based on this finding, the district court concluded that "[t]here is no evidence that any of the penalties assessed [for tax years 1990 to 1996] have even a remote relationship to the defendants' breach of the contract." The district court further concluded that because the defendants were current on required contractual payments by December 29, 1997, Misle had received all money due him prior to the time taxes were due in 1997 and 1998, and that thus any taxes or penalties for those years were also not attributable to the defendants' breach of the agreement. Noting that the amended petition did not include any claim on behalf of Bryan, the court entered summary judgment against him. Finally, the court overruled that portion of the motion for summary judgment relating to state tax penalties and interest, finding there was insufficient evidence to support the moving parties' claim that they were entitled to judgment as a matter of law on these issues.

Following an additional hearing, the district court entered an order on March 11, 2002, granting Julius' motion for summary judgment for the same reasons set forth in its previous order. In the same order, the court determined that because there was no evidence that state tax issues should be treated differently than federal tax issues or any evidence that any of Misle's state tax liability was caused by a breach of the agreement, summary judgment was appropriate for all defendants as to all remaining issues.

Misle and Bryan filed a timely motion for new trial, which was overruled. They then perfected this appeal, which we moved to our docket pursuant to our statutory authority to regulate the

dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Misle and Bryan assign, restated and consolidated, that the trial court erred (1) in granting summary judgment in favor of HJA with respect to Misle's claim for reimbursement of tax deficiencies, penalties, and interest and (2) in refusing to receive two affidavits offered in opposition to the motions for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dean v. Yahnke*, 266 Neb. 820, 670 N.W.2d 28 (2003); *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Big Crow v. City of Rushville*, 266 Neb. 750, 669 N.W.2d 63 (2003); *Borley Storage & Transfer Co. v. Whitted*, 265 Neb. 533, 657 N.W.2d 911 (2003).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *K N Energy v. Village of Ansley*, 266 Neb. 164, 663 N.W.2d 119 (2003); *Wolfe v. Becton Dickinson & Co.*, 266 Neb. 53, 662 N.W.2d 599 (2003).

## ANALYSIS

■ We begin by noting that while there are multiple parties to this action, the issues presented for review in this appeal involve only appellant Misle and appellee HJA. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003). Misle and Bryan neither assign nor argue any error

with respect to the entry of summary judgment against Bryan or that in favor of Julius and the estate of Abram. Accordingly, we consider only the question of whether the district court erred in entering summary judgment in favor of HJA on Misle's claims.

In our review of this issue, we are guided by familiar general principles. The party moving for summary judgment, in this case HJA, has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. See, *Wolfe, supra; Rush v. Wilder,* 263 Neb. 910, 644 N.W.2d 151 (2002). After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Polinski v. Sky Harbor Air Serv.,* 263 Neb. 406, 640 N.W.2d 391 (2002); *Iwanski v. Gomes,* 259 Neb. 632, 611 N.W.2d 607 (2000). In analyzing the evidence presented to the district court within this framework, it is helpful to divide Misle's claim against HJA into three categories: (1) the claim that HJA is liable for taxes incurred by Misle for the years 1990 through 1996, inclusive, as determined by the Tax Court; (2) the claim that HJA is liable to Misle for penalties and interest on such liability; and (3) the claim that HJA is liable for taxes, penalties, and interest which Misle incurred for the years 1997 and 1998.

## 1990-96 TAXES

The evidence offered by HJA in support of its motion for summary judgment includes the 1997 modified judgment, which specifies the issues which remained unresolved at that time, and the subsequent opinion of the Tax Court, which determined tax liability and penalties owed by Misle for the years 1990 through 1996, inclusive. The 1997 modified judgment, which is an interlocutory order, refers twice to "federal and state tax penalties and interest" charged against Misle as a result of HJA's breach of the agreement, in amounts which had yet to be determined by the Tax Court. Following each appearance of that phrase, the district court concluded that Misle was entitled to recover such

"penalties and interest" when the amounts were determined. Thus, while the 1997 order clearly anticipates a possible future recovery from HJA of penalties and interest to be assessed against Misle by federal and state taxing authorities, it does not find that the actual tax liability upon which such penalties and interest may be based is a recoverable element of damages in Misle's breach of contract action.

The Tax Court opinion further reinforces this conclusion. The opinion focuses upon payments actually made by HJA during the years in question but not reported as income by Misle. The Tax Court concluded that such payments did constitute taxable income to Misle in the years that they were made and that therefore, Misle had an obligation to pay taxes on said amounts. Thus, Misle's tax liability arose from payments which HJA actually made under the agreement, not from any alleged failure or delay in making such payments. Taken together, the 1997 modified judgment and the opinion of the Tax Court constitute a prima facie showing that HJA has no liability to Misle for the taxes he was determined to owe on payments made under the agreement for the years 1990 through 1996, inclusive.

Misle argues, however, that such liability arises from the following language in the agreement pertaining to payments for his covenant not to compete:

> Pursuant to . . . the Agreement, . . . Misle is to receive $2.8 million over a period of 120 months. We acknowledge that such payments are designed to be sufficient to retire your indebtedness of approximately $1.2 million plus interest thereon, as well as the federal and state income tax due from you on the receipt of such monies. We specifically agree that if the federal and state income taxes (associated with these payments) shall be due prior to the scheduled receipt of such payment, e.g. such loans being accelerated or refinanced at a different bank, or if taxing authorities require recognition of all such payments as income prior to their receipt by [Misle], or for any other reason, then the amounts due under . . . the Agreement shall be accelerated and become due at such time.

The construction of a contract is a matter of law. *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 637 N.W.2d

876 (2002); *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001). When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002); *In re Estate of Jakopovic*, 261 Neb. 248, 622 N.W.2d 651 (2001).

The plain language of the above-quoted contractual provision relied upon by Misle does not require HJA to assume liability for tax obligations incurred by Misle as a result of payments made pursuant to the agreement. Instead, the plain language acknowledges that Misle would incur tax liability with respect to payments made to him or on his behalf under the agreement and reflects only an undertaking by HJA to accelerate the installment payments for the covenant not to compete if necessary to allow Misle to meet his tax obligations in a timely manner. We therefore conclude as a matter of law that HJA has no obligation to pay taxes owed by Misle on the payments made by HJA under the agreement, either as an element of damages or pursuant to any contractual undertaking.

### 1990-96 PENALTIES AND INTEREST

In its 1997 modified judgment, the district court found that Misle incurred tax liability as a consequence of payments made by HJA directly to his creditors under the agreement, and

> upon the failure of the payment of those taxes, interest and penalties were assessed against [Misle]. *Direct evidence with regard to this matter shows that [Misle] was unable to pay the taxes because of the failure of the defendants to provide the income to him as contemplated* in the [covenant not to compete].

(Emphasis supplied.) We do not know what "direct evidence" the court was referring to because the record from the 1996 trial has not been provided to us in this appeal. We do know, of course, that the record before the district court at that time did not include the final adjudication by the Tax Court with respect to penalties and interest owed by Misle. That adjudication, made

in October 2000, conclusively establishes that the penalties and interest assessed for the years 1990 through 1996, inclusive, did not result from Misle's *failure to pay* taxes on income which he reported, but, rather, from his *failure to report income* because of a mistaken or misguided belief that it was not subject to taxation. The record does not reflect any tax penalties or interest other than those which are the subject of the Tax Court adjudication and related state assessments.

Misle assigns and argues that the district court erred in sustaining objections to affidavits of his lawyer and accountant offered in opposition to HJA's motion for summary judgment. Each affiant sought to characterize certain provisions of the agreement and stated that delays by HJA in making payments to Misle prevented him from paying his taxes, resulting in penalties and interest. Counsel for HJA objected to the affidavits on grounds that they had not been served prior to the date of the hearing, see Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2002), and that the affidavits constituted legal conclusions and hearsay. We conclude that the district court did not err in sustaining this objection. However, we further note that even if the affidavits had been received, they would not have created a genuine issue of material fact with respect to the basis upon which penalties and interest were assessed. This is so because the opinion of the Tax Court conclusively establishes that such assessment was not due to Misle's failure or inability to pay taxes on reported income, but, rather, his failure to report as income payments made under the agreement during each of the years in question and his complete failure to file a 1995 tax return.

### 1997-98 TAXES, PENALTIES, AND INTEREST

The amended petition filed in 2001 included a claim for taxes, penalties, and interest for the 1997 and 1998 tax years, noting that the "precise amount" due for those years was unknown due to a "still pending [Internal Revenue Service] Appeal's Office review." The district court found that based upon the undisputed records maintained by its clerk, HJA had paid all amounts due under the agreement and the modified judgment as of December 29, 1997, thus negating any claim that delayed payments impacted Misle's 1997 or 1998 tax returns. This determination

was correct. As we have previously noted, HJA had no obligation to pay Misle's tax liability. Any claim that it wrongfully deprived him of funds from which he could satisfy his 1997 and 1998 tax liability, thereby resulting in penalties or interest, is clearly refuted by the evidence that all required payments were made before the filing deadline for the 1997 tax returns.

## CONCLUSION

■ For the reasons discussed, we reject Misle's argument that the 2002 order of the district court, entering summary judgment in favor of HJA, is inconsistent with its 1997 interlocutory order and is therefore erroneous. Under Nebraska law, a district court can modify a nonfinal order outside the term in which the order was rendered. See, *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *City of Wood River v. Geer-Melkus Constr. Co.*, 233 Neb. 179, 444 N.W.2d 305 (1989). Presented with the 2000 Tax Court adjudication which conclusively refuted a factual premise upon which it had based its 1997 findings, the district court did not err in entering summary judgment in favor of HJA. The judgment is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.