WASHINGTON MUTUAL BANK, FA, APPELLANT, V. ADVANCED CLEARING, INC., APPELLEE.

679 N.W.2d 207

Filed May 7, 2004.    No. S-03-054.

T. Randall Wright, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellant.

Patrick B. Griffin, Suzanne M. Shehan, and Stephen J. Pedersen, of Kutak Rock, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Washington Mutual Bank, FA (Washington Mutual), filed suit against Advanced Clearing, Inc., alleging breach of warranty and negligent misrepresentation. The Douglas County District Court sustained a motion for summary judgment filed by Advanced Clearing, and Washington Mutual appeals.

## SCOPE OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Misle v. HJA, Inc., ante* p. 375, 674 N.W.2d 257 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

Washington Mutual is a bank that has its principal place of business in Seattle, Washington. Advanced Clearing is a clearing broker for Ameritrade Holding Corporation and its affiliates, subsidiaries, and other correspondent brokers. Advanced Clearing does business and has offices in Omaha, Nebraska. At all times relevant to this case, Yu Kiu Yu and Helen Suk Ching Lam held three accounts with Washington Mutual as joint tenants. Two of the accounts were certificates of deposit, and the other was a money market account.

On June 11, 1998, a "sight draft" was sent from Advanced Clearing to Washington Mutual. A sight draft is a request sent from one financial institution to another seeking the transfer of funds. The sight draft at issue requested that one of Yu and Lam's certificate of deposit accounts be liquidated and that the funds be transferred to Advanced Clearing. The sight draft contained signatures in the spaces provided for the account holders. Beside each of these signatures was a "Medallion Signature Guarantee Stamp" (Medallion Stamp) bearing the signature of Kurt Halvorson, who was president of Advanced Clearing at that time.

Katherine Munoz, a Washington Mutual employee, reviewed, approved, and processed the sight draft. On June 24, 1998, a check in the amount of $44,351.37 was drawn on Yu and Lam's account. The check was made payable to Advanced Clearing for the benefit of Yu and Lam. Shortly after the funds were received by Advanced Clearing, they were forwarded to another financial institution.

On December 4, 1998, Yu filed a forgery affidavit with Washington Mutual. Therein, he claimed that he did not sign or authorize the sight draft, nor did he receive any benefit from the proceeds of the resulting check. Yu asserted that he had discovered the unauthorized activity on November 28 and that his delay in ascertaining the situation was caused by his bank statements being sent to the wrong address. Lam made the same claims in a nearly identical forgery affidavit filed with Washington Mutual on January 12, 1999.

After an investigation into the disposition of the funds, Washington Mutual chose to honor these forgery affidavits. Washington Mutual reimbursed Yu and Lam in the amount of $46,449.97, which included the amount of the check, reimbursement of a penalty, and interest.

Washington Mutual subsequently sued Advanced Clearing, alleging breach of warranty and negligent misrepresentation. Advanced Clearing moved for summary judgment. After a hearing on the motion, the district court granted summary judgment in favor of Advanced Clearing. Washington Mutual filed a timely notice of appeal.

## ASSIGNMENTS OF ERROR

Washington Mutual assigns the following restated errors to the order of the district court: (1) its finding that Washington Mutual could not have relied on the Medallion Stamp, (2) its finding that Washington Mutual did not in fact rely on the Medallion Stamp, and (3) its ruling that Advanced Clearing was entitled to summary judgment.

## ANALYSIS

Washington Mutual's cause of action is based upon breach of warranty and negligent misrepresentation. One of the elements of a cause of action for breach of warranty is reasonable

reliance. See *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986). Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information. *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994). The Restatement (Second) of Torts § 552 at 126 (1977) provides: "One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information . . . ." Accordingly, one of the elements of a cause of action for negligent misrepresentation is justifiable reliance on the part of the plaintiff.

■ This case comes to us following the entry of summary judgment in favor of Advanced Clearing. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Egan v. Stoler*, 265 Neb. 1, 653 N.W.2d 855 (2002).

Munoz, the Washington Mutual employee who processed the sight draft, testified that she had no independent recollection of reviewing the document. She agreed that she would have reviewed the signature card of Yu and Lam before she approved any transfer of funds. Prior to approval, she would have determined that the signatures on the sight draft appeared similar to those on Yu and Lam's signature card.

Washington Mutual also offered the affidavit of David Volkman, which stated that Volkman was a tenured professor at the University of Nebraska at Omaha, where he served as the chair of the Department of Finance, Banking, and Law. His experience prior to appointment to his present position included serving as an assistant national bank examiner for the Office of the Comptroller of the Currency and as an account executive for a financial brokerage house. Volkman averred that he had reviewed the depositions of various parties involved in this case and that based upon his education and experience, it was his opinion that "Advanced Clearing inappropriately used [its Medallion Stamp] by not validating signatures on account transfer forms."

Volkman opined that, in general, the financial community believes that the intent of the Medallion signature guarantee program is to thwart fraudulent activities through forgery and to aid

transfer agents for all assets. According to Volkman, the financial community highly regards the Medallion signature guarantee program and is aggressive in maintaining the program's reputation by diligently verifying signatures before the stamp is affixed for all transferred accounts and all assets, not just equity and debt investments. He stated that this view was held by local financial institutions as well as government organizations, such as the Office of the Comptroller of the Currency and the Federal Reserve. In conclusion, Volkman stated that because of the use of signature verification for all assets and the high regard for and reliance on the Medallion signature guarantee program by the financial community, it was his opinion that Washington Mutual reasonably relied on the validity of the signatures on the sight draft.

Halvorson, the president of Advanced Clearing in June 1998, testified that Advanced Clearing placed the Medallion Stamp on documents other than those dealing with securities. The Medallion Stamp was placed on sight drafts directed toward financial institutions that did not participate in the automated customer account transfer system (ACATS). He stated that in such circumstances, the Medallion Stamp merely authenticated that the document came from the institution that affixed the Medallion Stamp. According to Halvorson, in this situation, the Medallion Stamp did not guarantee the validity of the signature.

Angel Peterson, an Advanced Clearing employee in the new account department, testified that Advanced Clearing used the Medallion Stamp on non-ACATS transfers. She characterized the sight draft at issue in this case as a non-ACATS form. It was her understanding that industry standards dictated that affixing a Medallion Stamp on non-ACATS transfer forms guaranteed that the form was complete and signed, but had nothing to do with the validity of the signature.

The district court concluded that Washington Mutual could not have reasonably relied upon the Medallion Stamp affixed by Advanced Clearing when processing the sight draft in question. It found that pursuant to Washington Mutual's written policies, a Medallion Stamp affixed to a sight draft could not be relied upon to guarantee signatures on bank transfers. Washington Mutual's Medallion Stamp policy provided: "The Medallion STAMP is not to be used as a signature for a Notary Acknowledgement,

Notary Jurat or an <u>Endorsement Guarantee of a negotiable item (i.e., check, draft or collection item)</u>. . . . The Medallion Signature Guarantee Stamp should ONLY be used for securities transactions."

The district court also concluded that Washington Mutual did not, in fact, rely upon the presence of the Medallion Stamp on the sight draft it received from Advanced Clearing. The court found that since Munoz reviewed the signature card of Yu and Lam and independently determined that the signatures on the card were similar to those on the sight draft, Washington Mutual did not rely upon the presence of the Medallion Stamp on the document. The court therefore granted Advanced Clearing's motion for summary judgment.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Misle v. HJA, Inc., ante* p. 375, 674 N.W.2d 257 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The question for our consideration is whether Washington Mutual could have reasonably or justifiably relied upon the Medallion Stamp affixed to the sight draft it received from Advanced Clearing. In determining the answer to this question, we examine the policies of Washington Mutual with regard to the *use* of a Medallion Stamp and the *acceptance* of a Medallion Stamp.

In its analysis, the district court focused primarily on Washington Mutual's policy regarding the *use* of a Medallion Stamp. According to Washington Mutual's online employee policy manual, its employees could affix a Medallion Stamp only on documents related to securities transactions. Thus, it is clear that Washington Mutual employees could not *use* the Medallion Stamp on a sight draft because it is not a securities transaction. Washington Mutual's policy manual also provided that the Medallion Stamp was not to be *used* to guarantee signatures in bank account transfers.

We are more persuaded by Washington Mutual's policy with regard to the *acceptance* of a Medallion Stamp. It was the policy of Washington Mutual for the processor of a sight draft to require a signature guarantee as a prerequisite to processing such a transaction. With respect to the *acceptance* of a Medallion Stamp as a signature guarantee when a Medallion Stamp was used by another institution, Washington Mutual's policy manual stated:

**Presentation of a Medallion Signature Guarantee in Connection with Deposit Transaction**

If an endorsement guarantee is required, a standard financial institution endorsement guarantee stamp must be presented. A Medallion Signature Guarantee S[t]amp is NOT ACCEPTABLE. Use of the Medallion Stamp in connection with deposit transactions is outside the scope of the STAMP program.

— If an individual presents a Medallion Guarantee from another institution in this context, request an appropriate endorsement guarantee (not the Medallion Signature Guarantee STAMP).

— DO NOT USE your financial center's Medallion Signature Guarantee Stamp as an endorsement guarantee for deposit transactions. Your financial center should have a standard endorsement guarantee stamp to accom[m]odate these types of requests.

Thus, the policy manual contemplated a situation wherein Washington Mutual would be presented with a Medallion Stamp from another financial institution in the context of a deposit transaction. In such a circumstance, Washington Mutual's policy did not permit the *acceptance* of the Medallion Stamp as an endorsement guarantee for deposit transactions.

Washington Mutual's policy with regard to sight drafts required that upon receipt of a sight draft, the processor was responsible for examining the document to determine whether it bore a signature guarantee stamp. The policy manual dictated that Washington Mutual would not accept a Medallion Stamp as a signature guarantee, and if such a stamp was presented, the correct procedure was to request an appropriate, standard financial institution endorsement guarantee stamp.

Even when viewing the evidence in the light most favorable to Washington Mutual and giving it the benefit of all reasonable inferences deducible from the evidence, we conclude that Washington Mutual's policy did not allow its employees to reasonably or justifiably rely on a Medallion Stamp as a signature guarantee in the transaction presented in this case. Thus, there is no genuine issue as to any material fact that prevents summary judgment in favor of Advanced Clearing.

Because we have concluded that Washington Mutual could not have reasonably or justifiably relied upon the Medallion Stamp, it is not necessary to address Washington Mutual's other assignments of error.

## CONCLUSION

The order of the district court granting summary judgment in favor of Advanced Clearing is affirmed.

AFFIRMED.