CHRISTOPHER RANGE, APPELLANT, V. ABBOTT SPORTS COMPLEX, AN UNINCORPORATED ASSOCIATION, ET AL., APPELLEES.
691 N.W.2d 525

Filed February 4, 2005.    No. S-03-1148.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for appellant.

David A. Dudley, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees Ethel S. Abbott Charitable Foundation and Capital Sports Foundation.

John C. Brownrigg and Travis A. Ginest, of Erickson & Sederstrom, P.C., for appellee Lincoln Adult Soccer Association.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Christopher Range was injured while playing in a soccer match at the Abbott Sports Complex in Lincoln. He sued the Abbott Sports Complex; the Ethel S. Abbott Charitable Foundation, Inc. (Abbott Foundation); the Capital Sports Foundation, Inc. (CSF); and the Lincoln Adult Soccer Association (LASA). (The Abbott Foundation, the CSF, and the LASA are collectively referred to herein as "the appellees." The CSF was responsible for building and developing the Abbott Sports Complex, which is a site name only.) The Lancaster County District Court granted the appellees' motions for summary judgment, and Range appeals.

## SCOPE OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

Range injured his right knee on April 26, 1998, while competing in a soccer match at the Abbott Sports Complex, a soccer facility operated by the Abbott Foundation. The event was sponsored by the LASA and the CSF. In his petition, Range alleged that he stepped in a hole with his right foot and that the hole was

a defective condition in the athletic field, not a condition created by use of the field for purposes of the soccer match. Range alleged that the appellees either knew of the hole or, in the exercise of reasonable care, would have discovered the hole. He claimed that as a proximate result of the appellees' negligence, he suffered serious and permanent injuries, including a rupture of his right patellar tendon and superior displacement of his patella. He sought damages of $16,000 for medical care and treatment; loss of earnings in excess of $10,000; future expenses for medical care and treatment; damages for impairment of future earning capacity; and past and future expenses for physical pain, mental suffering, disability, and embarrassment.

The trial court sustained the appellees' motions for summary judgment. It found that Range was a participant in the LASA division II soccer league in the spring of 1998 and that on April 26 at 1 p.m., his team was scheduled to play on field 13 at the Abbott Sports Complex. Range arrived at the complex 20 to 30 minutes before the match and warmed up. During this time, he did not notice any problems with the field. The center referee, Steven Stepanek, and the linesman referee, Nathan Sestak, also inspected the field prior to the match and did not notice any problems.

The trial court found that the first 80 to 85 minutes of the soccer match were played without incident. It noted that Range did not know how long the hole had existed. The court concluded that Range had failed to establish that the appellees had constructive knowledge of the hole. It found that Range had not submitted evidence from which it could be inferred that the hole had existed for a sufficient length of time prior to the injury and which would create a genuine issue of material fact as to whether the appellees had constructive knowledge of the hole. The court opined that Range had the burden to establish a prima facie case of premises liability. Since Range had admitted that there was no way of knowing how long the hole had existed, the court determined that the appellees were entitled to judgment as a matter of law. Range timely appealed.

## ASSIGNMENTS OF ERROR

Range assigns as error the trial court's conclusion that the appellees were entitled to judgment as a matter of law and the

trial court's failure to conclude that a genuine issue of material fact existed regarding the appellees' constructive knowledge of the hole that allegedly caused Range's injury.

## ANALYSIS

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Blue Cross and Blue Shield v. Dailey,* 268 Neb. 733, 687 N.W.2d 689 (2004). On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Washington Mut. Bank v. Advanced Clearing, Inc.,* 267 Neb. 951, 679 N.W.2d 207 (2004). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Blue Cross and Blue Shield v. Dailey, supra.*

Range stated in his deposition that on the day of the injury, he arrived 20 to 30 minutes before the soccer match in order to warm up. He did not notice any problems with the condition of the field or any holes and did not hear anyone complain about the field's condition. Prior to that day, he had never observed a hole on any of the fields at the Abbott Sports Complex, nor had anyone else ever mentioned seeing a hole there.

Range described the incident as follows:

> I was 20 yards ahead of everybody, running straight down the field. The goalkeeper didn't come out, so I decided to veer off to the southwest corner to get an angle on the goal.
>
> . . . .
>
> . . . And before I had a chance — I was probably two or three steps away from taking a shot. I was running along. I felt — it felt similar to what you would feel if you were walking down stairs in the dark, you thought you were on the last stair, but there's still another one. It was just like I went to put my foot down and there was nothing there. Next thing I know, my kneecap is halfway up my thigh.

After the fall, Range rolled once or twice and tried to straighten his leg. He said that as he lay on the ground, he could see a hole

3 to 5 yards away, and he described it as "a small burrowing animal hole," about 4 to 5 inches wide. However, he did not talk to anyone about the hole. Range said he did not know how long the hole had been on the field, and he admitted there was no way of knowing how long it had been there.

Range said he was not aware of any defender in physical contact with him immediately prior to his fall, and the central defender was 10 yards behind him. After Range fell, he started cursing. He said one of his teammates tried to get him to stand up and get off the field, but when the teammate saw that Range's leg was injured, an ambulance was called. Range ruptured his patellar tendon and had surgery the next day. He has had five additional surgeries on the knee.

Stepanek, the center referee, stated that referees are taught to examine the field before a match. They walk through the penalty box area, across the field, and to the other end of the field. He said that he completed a walk-through inspection of the field on the day Range was injured. Stepanek did not see a hole in the penalty box or anywhere else on the field at any time on that date. He stated that it was the general practice for soccer players to report unsafe conditions to the referees and that no one reported to him that they had seen a hole prior to the match. If anyone had reported a hole in the field, the situation would have been addressed.

Sestak, another referee, served as the linesman. He said he customarily inspected the penalty box and goal area of the soccer fields prior to allowing a match to start. In this case, he inspected the areas and found no holes. Sestak agreed with Stepanek that it was the general practice among soccer players in Lincoln and Omaha to report unsafe conditions to the referees. Prior to the match, no one reported seeing a hole.

A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the defendant should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4)

the defendant failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003).

In granting summary judgment, the trial court opined that the dispute between the parties was whether Range could establish constructive notice to the appellees of the hole on the soccer field. To satisfy this burden, Range had to provide some evidence that the appellees either created the hole, had actual knowledge of it, or should have discovered it by the exercise of reasonable care. The court found there was no evidence that would sustain this burden.

According to Range, the issue is resolved by determining whether the referees, in their inspection of the field prior to the match, conformed their conduct to the appropriate standard of care in order to detect any problems on the soccer field. The trial court found that Nebraska case law disagreed with Range's position.

In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995). In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, this court has refused to allow the jury to speculate as to the possessor's negligence. *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995).

The trial court reasoned that the appellees could be held liable only if the hole was visible and apparent for a sufficient length of time prior to Range's injury in order to impute to them constructive notice of the hole. Relying on our decision in *Herrera v. Fleming Cos., supra*, it concluded that Range could not establish that the appellees had constructive knowledge of the hole because he admitted there was no way of knowing how long the hole had existed and therefore the appellees were entitled to judgment as a matter of law.

In *Herrera*, a customer, Lorena Herrera, brought a slip-and-fall action against a grocery store after she slipped on a wet floor in the store's restroom. The district court granted the store's motion

for summary judgment. It found that Herrera had failed to establish that the store knew of the water on the floor or should have known of the water. The Nebraska Court of Appeals reversed, holding that the store had failed to make a prima facie showing that it had exercised reasonable care.

We reversed the decision of the Court of Appeals and held that a plaintiff in a premises liability case is required to adduce evidence showing that there was a negligent act on the part of the defendant and that such act was the cause of the plaintiff's injury. The evidence of negligence is insufficient if the finder of fact must guess at the cause of the accident.

At the summary judgment hearing, the store offered Herrera's deposition, in which she stated that she did not know how long the water had been on the floor. The store had a policy of keeping the floors clean, and the floors were regularly inspected for spills. Based on this evidence, we concluded that no reasonable inference could be drawn as to the length of time the water had been on the floor. There was no evidence or reasonable inference that the store created the condition, knew of the condition, or should have known of the condition. If those facts remained uncontroverted, the store was entitled to judgment as a matter of law. Herrera failed to produce any evidence from which a reasonable inference could be drawn that the store knew or by the exercise of reasonable care should have known of the water on the floor.

In the case at bar, the trial court concluded that *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003), was applicable because the appellees established that no one knew or should have known of the hole prior to Range's injury. This shifted the burden to Range to establish that the appellees knew or by the exercise of reasonable care should have known of the hole on the soccer field prior to the injury.

The question is whether Range is entitled to an inference that the hole was present on the soccer field prior to the start of the match. Before considering whether the appellees had constructive knowledge of the hole, the evidence must at least create a reasonable inference that a hole did in fact exist prior to the start of the match.

For purposes of summary judgment, we view the evidence in a light most favorable to Range and give him the benefit of all

reasonable inferences deducible from the evidence. Range testified that a hole caused his injury. From Range's description of the hole, it is reasonable to infer that the hole was not recently created. Although Range said he did not know how long the hole had been there, he described it as somewhat round and 4 to 5 inches in diameter with grass growing around it but not inside it. It appeared to be a hole made by a small burrowing animal, but Range did not observe loose dirt around the perimeter of the hole. From these facts, Range is entitled to an inference that the hole did not come into existence during the match.

In *Herrera v. Fleming Cos., supra,* it was not possible to infer how long the water had been on the restroom floor before Herrera entered the restroom and slipped. The puddle of water could have formed very quickly. A previous user of the restroom could have created the puddle. The length of time that the water was on the floor could not be determined, and no inference that it was there for a long period of time could be given in favor of Herrera. Inferences based upon guess or speculation do not create material issues of fact for purposes of a summary judgment. See *Richards v. Meeske,* 268 Neb. 901, 689 N.W.2d 337 (2004).

Range testified that the hole appeared to have been created by a small burrowing animal and that there was grass growing around it. In responses to interrogatories, he stated that there was no fresh or loose dirt around the perimeter of the hole. These facts support a reasonable inference, not mere speculation, that the hole existed prior to the start of the soccer match.

Therefore, giving Range the benefit of all reasonable inferences deducible from the evidence regarding the existence of the hole, we conclude that a genuine issue of material fact does exist as to whether the appellees had constructive knowledge of the hole. For this reason, the trial court erred in sustaining the appellees' motions for summary judgment.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.