Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/22/2016 09:07 AM CDT

Susan L. Edwards, appellant, v. Hy-Vee, Inc.,
a foreign corporation, doing business
as Hy-Vee, appellee.

___ N.W.2d ___

Filed July 22, 2016.    No. S-15-682.

1. **Summary Judgment: Appeal and Error.** An appellate court will
affirm a lower court's grant of summary judgment if the pleadings and
admitted evidence show that there is no genuine issue as to any material
facts or as to the ultimate inferences that may be drawn from those facts
and that the moving party is entitled to judgment as a matter of law.

2. **Negligence: Liability: Proximate Cause.** In premises liability cases,
an owner or occupier is subject to liability for injury to a lawful visi-
tor resulting from a condition on the owner or occupier's premises if
the lawful visitor proves (1) that the owner or occupier either created
the condition, knew of the condition, or by exercise of reasonable care
would have discovered the condition; (2) that the owner or occupier
should have realized the condition involved an unreasonable risk of
harm to the lawful visitor; (3) that the owner or occupier should have
expected that the visitor either would not discover or realize the danger
or would fail to protect himself or herself against the danger; (4) that
the owner or occupier failed to use reasonable care to protect the visitor
against the danger; and (5) that the condition was a proximate cause of
damage to the visitor.

3. **Negligence: Words and Phrases.** Constructive knowledge is gener-
ally defined as knowledge that one using reasonable care or diligence
should have.

4. **Negligence: Liability: Invitor-Invitee: Notice.** In order for a defendant
to have constructive notice of a condition, the condition must be visible
and apparent and it must exist for a sufficient length of time prior to an
accident to permit a defendant or the defendant's employees to discover
and remedy it.

5. **Negligence: Evidence: Liability: Juries.** In the absence of evidence to
support an inference of the possessor's actual or constructive knowledge

of a hazardous condition, the Nebraska Supreme Court has refused to allow the jury to speculate as to the possessor's negligence.

6. **Summary Judgment.** Inferences based upon guess or speculation do not create material issues of fact for purposes of a summary judgment.

7. **Liability: Invitor-Invitee.** The owner of a business is not an insurer of a patron's safety.

8. **Courts: Public Policy.** The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

James R. Welsh and Christopher P. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellant.

Daniel J. Welch, Catherine Dunn Whittinghill, and Damien J. Wright, of Welch Law Firm, P.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

CASSEL, J.

INTRODUCTION

After a grocery store's customer slipped on a piece of watermelon and fell, she sued the store for her injuries. A man was handing out watermelon samples to customers approximately 6 feet from where the customer fell, but there was no evidence that the watermelon was on the floor at the location of the fall for any period of time. The district court entered summary judgment in favor of the store. Because there is no genuine issue of material fact as to whether the store created or had actual or constructive knowledge of the condition, we affirm the summary judgment. In doing so, we decline the customer's invitation to adopt a "mode-of-operation" approach to determine premises liability.

## BACKGROUND

Susan L. Edwards slipped and fell as she was leaving a grocery store operated by Hy-Vee, Inc., doing business as Hy-Vee. She sued Hy-Vee, alleging that it was negligent in a number of ways and that it knew or should have known that the floor was wet and that the wet area was a hazard to its customers.

Hy-Vee moved for summary judgment. Evidence adduced at the hearing established that as Edwards was leaving the store, she slipped on what looked like a piece of watermelon. Edwards' daughter picked a watermelon seed off the bottom of Edwards' shoe. Approximately 6 feet from where Edwards fell, a man was handing out watermelon samples to customers. Edwards did not know how long the watermelon was on the floor.

The district court granted summary judgment in favor of Hy-Vee. The court determined that the distribution of watermelon samples in a high traffic location was not enough to support a claim that Hy-Vee created the dangerous condition. The court also found that there was no genuine issue of material fact that Hy-Vee did not have actual or constructive notice of the dangerous condition.

Edwards timely appealed, and because of the novel approach she advocated, we moved the case to our docket.[1]

## ASSIGNMENTS OF ERROR

Edwards assigns that the district court erred in granting Hy-Vee's motion for summary judgment and in finding that Hy-Vee did not create the hazardous condition or have constructive knowledge of the watermelon on the floor.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

facts and that the moving party is entitled to judgment as a matter of law.[2]

## ANALYSIS

[2] In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.[3] We address Edwards' claims that there was a genuine issue of material fact as to whether Hy-Vee created the condition or had constructive knowledge of the condition.

### CREATION OF HAZARDOUS CONDITION

We first consider whether the district court erred in finding as a matter of law that Hy-Vee did not create the hazardous condition. Edwards contends that Hy-Vee created the hazard by permitting samples of watermelon to be handed out to customers in the store. We analyze the two cases discussed by the district court and the parties.

Edwards directs our attention to *Chelberg v. Guitars & Cadillacs*.[4] In that case, a patron at a nightclub slipped and fell in clear liquid located 4 or 5 feet from a trough that was filled with ice and bottles of beer. Evidence established that

[2] *Sulu v. Magana*, 293 Neb. 148, 879 N.W.2d 674 (2016).

[3] *Hodson v. Taylor*, 290 Neb. 348, 860 N.W.2d 162 (2015).

[4] *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998).

generally, a bartender would pull out a bottle and dry it with a towel before handing it to a customer, but sometimes customers pulled out bottles themselves. Then, when the beer trough closed, the bartender loaded the remaining beer bottles into cardboard cases and placed them on a dolly. After the beer trough closed on the day in question, the patron fell in the area where the dolly was loaded. We concluded that a question of fact existed as to whether the nightclub created the dangerous condition. We stated that a fact finder could determine that the bottles pulled out of the trough could drip on the floor. Further, a fact finder could find that employees allowed customers to remove bottles without wiping them and that employees removed bottles without wiping them when the beer trough closed. Thus, a fact finder could reasonably infer that the nightclub created the dangerous condition through the participation of its employees.

On the other hand, Hy-Vee argues that this case is more analogous to *Derr v. Columbus Convention Ctr.*[5] There, a hotel guest slipped on ice on the last step of a stairway. An ice machine was located 3 or 4 feet to the right of the stairway. We stated that in contrast to the situation in *Chelberg*, there was no evidence to suggest that hotel employees were actively involved in spilling the ice. We reasoned that the ice was spilled on the stair most likely from an ice bucket of another guest and that there was no evidence that any hotel employee created or was aware of the ice spill. Thus, we determined that a fact finder could not reasonably infer that the hotel created the hazard.

*Chelberg* is distinguishable from the instant case. The key to potential liability in that case was the active involvement of the nightclub's employees in creating the dangerous condition. There is no such evidence in this case. A fact finder could not reasonably infer that the man handing out samples dropped the watermelon, particularly when Edwards slipped approximately 6 feet away from the "sample stand." The only reasonable

---

[5] *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000).

inference from the watermelon's distance from the stand is that it was dropped by a customer, and not a Hy-Vee employee.

One cannot reasonably infer that Hy-Vee created the hazardous condition based on a customer's dropping of the watermelon. Edwards contends that Hy-Vee is not relieved of liability merely because the watermelon was likely dropped by a customer. She argues that the customer's actions were reasonably foreseeable and cites to a case[6] for the proposition that an owner is liable for the intervening acts of third parties if the intervening act is reasonably foreseeable. But to say that Hy-Vee created the condition through the actions of a third party would expand the definition of "created" well beyond its plain and ordinary meaning.

Because there was no evidence from which a fact finder could reasonably infer that Hy-Vee created the dangerous condition through the participation of its employees, the district court did not err in finding as a matter of law that Hy-Vee did not create the hazard.

Constructive Knowledge of Condition

[3] Edwards next argues that the district court erred in finding as a matter of law that Hy-Vee did not have constructive knowledge of the dropped watermelon. Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have.[7] Edwards suggests that a genuine issue of material fact exists as to whether the man handing out watermelon samples reasonably should have known that pieces of watermelon were being dropped on the floor. We disagree.

[4-6] There is no evidence to support an inference that Hy-Vee had constructive knowledge of the watermelon on the floor. In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident

---

[6] See *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009).

[7] *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014).

to permit a defendant or the defendant's employees to discover and remedy it.[8] In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, this court has refused to allow the jury to speculate as to the possessor's negligence.[9] Edwards did not know how long the watermelon was on the floor, and there was no evidence that Hy-Vee employees observed any watermelon on the floor. Edwards points to evidence that the man handing out samples had a cane, but this evidence simply does not raise an inference that the man put the watermelon on the floor or that he knew of its presence. Inferences based upon guess or speculation do not create material issues of fact for purposes of a summary judgment.[10] Because there is no evidence or reasonable inference that Hy-Vee knew or should have known of the watermelon on the floor, Hy-Vee was entitled to judgment as a matter of law.

## MODE-OF-OPERATION RULE

[7] Finally, we address Edwards' argument that Nebraska should adopt the mode-of-operation rule. This rule or approach to premises liability is a departure from the traditional premises liability approach. We have repeatedly stated that the owner of a business is not an insurer of a patron's safety.[11] But the mode-of-operation rule tends to make the owner just that. We decline to adopt the approach.

The mode-of-operation rule alters what a plaintiff must prove to make a prima facie case. "The 'mode-of-operation' rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions

---

[8] *Range v. Abbott Sports Complex*, 269 Neb. 281, 691 N.W.2d 525 (2005).

[9] *Id.*

[10] *Id.*

[11] See *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999).

would regularly arise."[12] In other words, "[a] plaintiff's proof of a particular mode-of-operation simply substitutes for the traditional elements of a *prima facie* case—the existence of a dangerous condition and notice of a dangerous condition."[13] One reason given for the rule is that it is "'unjust to saddle the plaintiff with the burden of isolating the precise failure' that caused an injury, particularly where a plaintiff's injury results from a foreseeable risk of harm stemming from an owner's mode of operation."[14]

The mode-of-operation rule has not been adopted by a majority of states. It appears that the traditional approach has been consistently followed by at least 21 states, including Nebraska.[15] Two other states have returned to the traditional

---

[12] *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 400, 733 P.2d 283, 285 (1987).

[13] *Id.*

[14] *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 788, 863 N.E.2d 1276, 1284 (2007).

[15] See *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003). See, also, *S. H. Kress & Company v. Thompson*, 267 Ala. 566, 103 So. 2d 171 (1957); *Kremer v. Carr's Food Center, Inc.*, 462 P.2d 747 (Alaska 1969); *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 114 Cal. Rptr. 2d 470, 36 P.3d 11 (2001); *Howard vs. Food Fair, New Castle*, 57 Del. 471, 201 A.2d 638 (1964); *Richardson v. Commodore, Inc.*, 599 N.W.2d 693 (Iowa 1999), *abrogated on other grounds, Koenig v. Koenig*, 766 N.W.2d 635 (Iowa 2009); *Maans v. Giant*, 161 Md. App. 620, 871 A.2d 627 (2005); *Clark v Kmart Corporation*, 465 Mich. 416, 634 N.W.2d 347 (2001); *Norman v. Tradehome Shoe Stores, Inc.*, 270 Minn. 101, 132 N.W.2d 745 (1965); *Sullivan v. Skate Zone, Inc.*, 946 So. 2d 828 (Miss. App. 2007); *Rallis v. Demoulas Super Markets, Inc.*, 159 N.H. 95, 977 A.2d 527 (2009); *Nourse v. Food Lion, Inc.*, 127 N.C. App. 235, 488 S.E.2d 608 (1997); *Johanson v. Nash Finch Company*, 216 N.W.2d 271 (N.D. 1974); *Anaple v. Oil Co.*, 162 Ohio St. 537, 124 N.E.2d 128 (1955); *Van Den Bron v. Fred Meyer, Inc.*, 86 Or. App. 329, 738 P.2d 1011 (1987); *Martino, Aplnt. v. Great A. & P. Tea Co.*, 419 Pa. 229, 213 A.2d 608 (1965); *Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273 (R.I. 2012); *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 542 S.E.2d 728 (2001); *Janis v. Nash Finch Co.*, 780 N.W.2d 497 (S.D. 2010); *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 396 S.E.2d 649 (1990); *McDonald v. University of W.Va.*, 191 W. Va. 179, 444 S.E.2d 57 (1994).

approach after court decisions were legislatively overruled.[16] We have identified 17 states that have adopted and retain the mode-of-operation rule.[17] Several states apply a "recurring condition rule," where a recurring potential hazard—in contrast with one arising from a particular mode of operation—may subject a store to liability.[18] Several states appear to have a hybrid approach.[19] And several other states apparently follow a burden-shifting approach.[20] Such divergence among the states

[16] See, *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315 (Fla. App. 2001) (superseded by statute as stated in *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418 (Fla. App. 2014)); *Gonzales v. Winn-Dixie Louisiana, Inc.*, 326 So. 2d 486 (La. 1976) (superseded by statute as stated in *Holden v. State Univ. Med. Center*, 690 So. 2d 958 (La. App. 1997)).

[17] See, *Chiara v. Fry's Food Stores of Arizona, Inc., supra* note 12; *Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 918 A.2d 249 (2007); *Gump v. Walmart Stores, Inc.*, 93 Hawaii 428, 5 P.3d 418 (1999), *affirmed in part and in part reversed on other grounds* 93 Hawaii 417, 5 P.3d 407 (2000); *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 707 P.2d 416 (1985); *Golba v. Kohl's Dept. Store, Inc.*, 585 N.E.2d 14 (Ind. App. 1992); *Jackson v. K-Mart Corp.*, 251 Kan. 700, 840 P.2d 463 (1992); *Sheehan v. Roche Bros. Supermarkets, Inc., supra* note 14; *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. 1989); *FGA, Inc. v. Giglio*, 278 P.3d 490 (Nev. 2012); *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 818 A.2d 314 (2003); *Lingerfelt v. Winn-Dixie Texas, Inc.*, 645 P.2d 485 (Okla. 1982); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983); *Canfield v. Albertsons, Inc.*, 841 P.2d 1224 (Utah App. 1992); *Malaney v. Hannaford Bros. Co.*, 177 Vt. 123, 861 A.2d 1069 (2004); *Pimentel v. Roundup Company*, 100 Wash. 2d 39, 666 P.2d 888 (1983); *Steinhorst v. H. C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970); *Buttrey Food Stores Division v. Coulson*, 620 P.2d 549 (Wyo. 1980).

[18] See, *Brookshires Grocery Co. v. Pierce*, 71 Ark. App. 203, 29 S.W.3d 742 (2000); *Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846 (Me. 1995); *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004).

[19] See, *Dunlap v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 327 N.E.2d 16 (1975); *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 148 N.E.2d 434 (1958); *Mahoney v. J. C. Penney Company*, 71 N.M. 244, 377 P.2d 663 (1962); *Zerilli v. Western Beef Retail, Inc.*, 72 A.D.3d 681, 898 N.Y.S.2d 614 (2010).

[20] See, *Safeway Stores, Inc. v. Smith*, 658 P.2d 255 (Colo. 1983); *Robinson v. Kroger*, 268 Ga. 735, 493 S.E.2d 403 (1997); *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003).

demonstrates that the mode-of-operation rule has not demonstrated the degree of superiority necessary to depart from long-settled law.

The traditional approach to premises liability balances two competing policies—requiring stores to exercise reasonable care to maintain the premises in a safe condition and protecting stores from becoming the insurers of their patrons' safety. Although virtually every court adopting the mode-of-operation rule declares that it is not making the store an insurer of its patrons' safety,[21] as early as 1994 a commentator recognized that in mode-of-operation rule cases, courts have created results approaching strict liability.[22] At oral argument, Edwards forthrightly acknowledged that she preferred a strict-liability approach. And the commentator noted that at least one scholar has directly advocated for strict liability—emphasizing the goal of accident reduction, i.e., deterrence.[23] But the commentator recognized that there is a practical limit to what a storekeeper can do to prevent accidents, concluding that "a rule of strict liability would impose a financial burden on storekeepers far in excess of that necessary to provide an adequate incentive."[24]

Moreover, the rule's adoption for self-service supermarkets would inevitably lead to pressure to expand the rule. Indeed, building upon a decision of Massachusetts' high court,[25] a recent case note expressly advocated extending the Massachusetts rule beyond the context of a self-service

---

[21] See, e.g., *Jackson v. K-Mart Corp., supra* note 17.

[22] See Steven D. Winegar, *Reapportioning the Burden of Uncertainty: Storekeeper Liability in the Self-Service Slip-and-Fall Case*, 41 UCLA L. Rev. 861 (1994).

[23] See *id.* (citing Edmund Ursin, *Strict Liability for Defective Business Premises—One Step Beyond* Rowland *and* Greenman, 22 UCLA L. Rev. 820 (1975)).

[24] *Id*. at 896.

[25] *Sheehan v. Roche Bros. Supermarkets, Inc., supra* note 14.

supermarket.[26] The policy issues involved require thoughtful analysis of costs and benefits, which can be best addressed in the legislative arena.

[8] The traditional approach is the product of the common law's long experience and refinement. The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.[27] The argument for the mode-of-operation rule fails this test. No matter which approach courts adopt, they universally declare that they are not making stores the insurers of their patrons. But common sense, confirmed by legal scholarship, teaches that adoption of the mode-of-operation rule effectively leads to strict liability. Thus, departure from the traditional approach leads to the very result the departing courts disclaim. And the experience of two states—which adopted the rule by court decisions only to be overruled legislatively—counsels that we exercise caution. In the light of this experience, we decline to adopt the mode-of-operation rule.

## CONCLUSION

Because there was no evidence from which a reasonable finder of fact could infer that Hy-Vee created the dangerous condition or had constructive knowledge of the watermelon on the floor, the district court did not err in granting summary judgment in favor of Hy-Vee.

Affirmed.

---

[26] William Brekka, *Extending the Mode-of-Operation Approach Beyond the Self-Service Supermarket Context*, 48 New Eng. L. Rev. 747 (2014) (advocating extension including, but not limited to, nightclub that permits patrons to bring drinks onto crowded dance floor, fast-food restaurant that permits customers to carry food to and from tables, racetrack that sells bottled drinks but does not provide trash receptacles, pizza counter that does not provide tables for customers, or movie theater that sells snacks and allows patrons to bring them into dark theater).

[27] *Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006).