IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GLESS V. DRITLEY PROPERTIES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LAURA GLESS AND DON CHRISTENSEN, APPELLANTS,

V.

DRITLEY PROPERTIES, LLC, AND DR. PAUL DRITLEY, DOING BUSINESS AS
ELKHORN ANIMAL HOSPITAL, APPELLEES.

Filed November 28, 2017.    No. A-16-978.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Julie Jorgensen, of Morrow, Willnauer, Klosterman & Church, L.L.C., for appellants.

Patrick S. Cooper and David P. Kennison, of Fraser Stryker, P.C., L.L.O., for appellees.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

INTRODUCTION

Laura Gless and her husband, Don Christensen, were customers of Elkhorn Animal Hospital. Gless slipped and fell on the property. Gless and Christensen filed an action against Dritley Properties, LLC, and Dr. Paul Dritley, doing business as Elkhorn Animal Hospital (collectively Dritley). The district court for Douglas County sustained Dritley's motion for summary judgment. Gless and Christensen appeal. For the reasons that follow, we affirm.

BACKGROUND

On October 10, 2011, Gless slipped and fell on water on the floor inside the foyer of Elkhorn Animal Hospital, located in Douglas County, Nebraska. She filed an action on October 9,

2014 alleging that she sustained personal injuries as a result of the fall. Christensen alleged loss of consortium due to Gless' injuries. They alleged that Dritley's negligence is the sole and proximate cause of Gless' injuries, and that Dritley knew or should have known about the water on the floor, or discovered the condition through the exercise of reasonable care. Gless and Christensen sought a judgment against Dritley for special damages, general damages, loss of consortium, and costs. Dritley filed an answer and affirmative defenses on November 12, 2014.

Depositions of Gless and Christensen were taken, as were the depositions of a few employees of Elkhorn Animal Hospital who were present on the day of the accident. During his deposition, Christensen stated that upon arriving at the animal hospital, he and Gless parked their vehicle and walked across the wet concrete parking lot toward the building's entrance. Gless described the weather that morning as mist to light rain.

The Elkhorn Animal Hospital building has an outdoor awning that protects the area immediately outside the exterior door. On the day of the incident, there were two floor mats located in that area outside of the building, and two more floor mats in the building's foyer. The foyer is an enclosed area measuring approximately 8 feet by 8 feet, and the mats inside the foyer measured approximately 3 feet by 3 feet.

Gless opened the building's exterior door and held it open so Christensen could enter carrying two cat crates. Christensen stated that he did not look at his shoes, but he was sure there was moisture on the bottom of his shoes as he approached the building. Christensen entered the foyer and stepped onto a floor mat. Then he moved aside as Gless stepped onto the mat.

Gless moved toward the door to the lobby. As she stepped off of the mat and onto the tile floor, she slipped. Gless testified that she did not see the water on the floor of the foyer until after she fell. She did not know how much water was on the floor, but said it was consistent with the type of moisture you would expect from people having walked through the foyer with wet shoes. She said she had no way of knowing how long the moisture was in the foyer before her fall.

Gless testified that she worked in retail and was familiar with the standards for maintaining customer-based establishments when there is inclement weather. Her employer required certain employees to make rounds to ensure there is no water or other hazard present. If a water hazard was discovered, one employee stayed close to it while another employee retrieved cleanup supplies, then the water would be cleaned up and a warning cone would be placed. She offered her opinion that Elkhorn Animal Hospital employees should have known the floor was wet and taken the necessary steps to clean up or warn patrons of the condition.

Christensen did not see any moisture on the floor before Gless fell. He did not know where the moisture was and he did not believe anyone had spilled in the foyer. He said the moisture was the type you would expect to transfer from the bottom of the feet of people or animals.

Following Gless and Christensen's depositions, Dritley filed a motion for summary judgment on May 4, 2016, pursuant to Neb. Rev. Stat. § 25-1331 (Reissue 2008), asserting that there are not genuine issues of material fact and Dritley was entitled to judgment as a matter of law. A hearing on Dritley's motion was held on August 24. Dritley offered the affidavits of two receptionists working at the Elkhorn Animal Hospital on October 10, 2011. Neither of the receptionists saw any water on the floor prior to Gless' fall.

Dritley offered the deposition of Heather Childress, the office manager for Elkhorn Animal Hospital. She testified that she was in the front office and reception area that morning and walked past the foyer door multiple times. She recalled that it was raining the day Gless fell, but said she did not see any water in the foyer. She said the staff typically watches for moisture on the floor which could include water or animal urine, and clients are "good about letting us know if something needs to be cleaned up."

After Gless fell, Childress went to her aid, and observed traces of water on the floor at that time. She said it was consistent with water tracked in by a person's shoe or an animal's feet. Dritley also offered affidavits of two patrons who had visited Elkhorn Animal Hospital on October 10, 2011 and arrived within 30 to 60 minutes of Gless' fall. They did not observe any water or moisture on the floor of the foyer.

The court found Dritley established that Gless and Christensen failed to produce evidence indicating how long the water had been on the floor prior to Gless' slip and fall, and there is only speculation as to where the water had come from. The burden shifted to Gless and Christensen to produce evidence that Dritley knew of the condition or should have known of the condition, and the court found they failed to meet this burden. As a result, the court found there was no genuine issue of material fact, so Dritley was entitled to judgment as a matter of law. The court granted Dritley's motion for summary judgment on September 22, 2016. Gless and Christensen timely appealed.

## ASSIGNMENTS OF ERROR

Appellants assert the court erred in sustaining Dritley's motion for summary judgment. Appellants specifically allege the evidence presented was sufficient to support a reasonable inference of constructive notice, there was sufficient evidence to establish a question of fact based on Dritley's lack of reasonable care, and Dritley's failure to inspect the property supports a theory of constructive notice.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inference deducible from the evidence. *Phillips v. Liberty Mut. Ins. Co.,* 293 Neb. 123, 876 N.W.2d 361 (2016).

## ANALYSIS

In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the

danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Edwards v. Hy-Vee, supra.*

### CONSTRUCTIVE NOTICE

There was no allegation that Dritley created the condition at issue, so the court was tasked with determining whether Dritley had actual or constructive notice of a dangerous condition to satisfy the first element for premises liability. There was no evidence that Dritley or any of the employees observed the water on the floor. The court found that Gless and Christensen failed to adduce any evidence suggesting that Dritley had actual notice of the condition, thus to avoid summary judgment, they must be able to prove that Dritley had constructive notice.

In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. *Edwards v. Hy-Vee, supra.* In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, the Nebraska Supreme Court has refused to allow the jury to speculate as to the possessor's negligence. *Id.*

Gless testified that she did not know how long the water was on the floor before her fall. Christensen said there was not a big puddle of water, it was the trace amounts of moisture which appeared to have been left behind from people's shoes or animals' feet.

As noted by the district court, in *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003), the plaintiff filed an action against a grocery store after slipping on a wet floor in the store's restroom. In moving for summary judgment, the store offered the plaintiff's deposition, in which she admitted that she did not know how long the water had been on the floor. Based upon this evidence, the Nebraska Supreme Court concluded there was no reasonable inference which could be drawn as to whether the water had been on the floor long enough that the store knew of the condition or should have known, thus the store was entitled to judgment as a matter of law. The court found this situation is similar to *Herrera*, as Gless admitted that she did not know how long the water had been on the floor or where it had come from.

In 2016, the Nebraska Supreme Court considered whether a grocery store had constructive notice that watermelon samples had been dropped on the floor, creating a dangerous condition. The plaintiff argued that the person handing out the samples reasonably should have known that pieces of watermelon were being dropped on the floor. The court stated "constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have." *Edwards v. Hy-Vee, supra.* The court found that the plaintiff did not present evidence as to how long the watermelon was on the floor, and there was no evidence that the Hy-Vee employees observed any watermelon on the floor. The Nebraska Supreme Court has held on multiple occasions that inferences based upon guess or speculation do not create material issues of fact for purposes of a summary judgment. *Id.*, citing *Range v. Abbott Sports Complex*, 269 Neb. 281, 691 N.W.2d 525 (2005).

Gless argues that the employees of Elkhorn Animal Hospital had constructive notice because on the day of the incident, inclement weather, including rain and mist, had been present

prior to her fall. However, the district court dismissed this argument, finding that there was no evidence from which one could infer how long the water had been on the floor in the exact location Gless' slip and fall took place. The court found the mere presence of precipitation outside did not shed any light on whether the condition existed for a sufficient length of time prior to the incident to permit Dritley's employees to discover and remedy it.

Gless and Christensen argue that this case is distinguishable from *Herrera v. Fleming Cos., supra*, because in *Herrera,* "the store had a policy of keeping floors clean, the floors were regularly inspected for spills by store employees, and that spills were cleaned up immediately." Brief for appellant at 12. They argue that Dritley had no policies or procedures in place to manage problems related to inclement weather, or, if there were policies, the employees were unaware of them and the policies were not followed. Gless and Christensen argue that there is evidence that no employee had been in the foyer for hours prior to the fall, thus, there is a reasonable inference of constructive notice. We disagree.

Gless and Christensen's petition did not allege that Dritley was negligent for failing to have or follow adequate cleaning policies and procedures. Even if it had, there is evidence that even though there are no formal procedures, the clinic employees were all involved in the management and upkeep of the facility. Childress testified that there were no written policies or procedures, but employees had assigned cleaning duties to be performed by the end of each shift. Further, any employee who observed potentially harmful or unsanitary conditions, such as a clump of pet hair or animal waste on the floor, was expected to promptly clean it up. Two patrons who had entered Elkhorn Animal Hospital within 30 to 60 minutes of Gless's arrival stated that they did not notice any water in the foyer. There was evidence from multiple employees who worked near and regularly walked by the foyer, that they could view the foyer from the reception desk and monitored the condition of the foyer throughout the day. These employees did not observe a hazard in the foyer on the day of Gless' fall, and stated in their affidavits that no other patrons reported a slick spot or the presence of moisture on the floor. In addition, while there is a general assumption that the water was tracked in from the outdoors, there is only speculation as to where the water came from. Because there is no evidence or reasonable inference that Elkhorn Animal Hospital employees or Dritley knew or should have known of the water on the floor prior to Gless' fall, Dritley was entitled to judgment as a matter of law.

EXERCISE OF REASONABLE CARE

Gless and Christensen assert Dritley failed to exercise reasonable care on October 10, 2011, as the staff failed to inspect the foyer from the time of opening at 7:30 a.m., until Gless' fall at approximately 10 a.m.

In a premises liability case, the plaintiff must establish that the defendant created the condition, knew of the condition, or by the exercise of reasonable care should have discovered or known of the condition. *Edwards v. Hy-Vee, supra.*

There is evidence that the employees of Elkhorn Animal Hospital were aware of the weather conditions, and that animals and people tend to track moisture into the building in inclement weather. There is also evidence that the employees did not enter the foyer area to ensure that water was not present. However, the two receptionists stated that they frequently looked at the

foyer to monitor the condition of those areas and did not see any moisture on the floor. They also stated that none of the approximately 20 patrons who entered the building prior to Gless' fall reported any slick spots or moisture in the foyer. As previously discussed, there is only speculation that the outdoor moisture was the source of the water on the floor, and there is no evidence whatsoever as to how long the water was on the floor before Gless' fall. Without this information we cannot find that, through the exercise of reasonable care, the condition should have or would have been discovered.

FAILURE TO INSPECT

Gless and Christensen argue that "case law supports the finding that a failure to inspect the premises can in and of itself lead to a finding of constructive notice." Brief for Appellant at 19. As previously discussed, there was no evidence in this case regarding the length of time the moisture was present on the floor, and no evidence that the condition would have been discovered through the exercise of reasonable care. Nonetheless, they argue there was no evidence presented that the property was inspected for the two and a half hours prior to Gless' fall, and this "should be sufficient to establish a duty to inspect and to establish constructive notice under Nebraska case law." Brief for Appellant at 20. In support of this argument, Gless and Christensen refer to cases from California and Michigan, and a federal maritime law case from Louisiana, arguing that employers or business owners cannot escape constructive notice and potential liability by declining to inspect the property.

In one example, Gless and Christensen refer to *Zipsuch v. LA Workout, Inc.*, 155 Cal. App. 4th 1281, 66 Cal. Rptr. 3d 704 (2007), in which a health club member was injured when her foot became stuck to a substance on a treadmill. The court found the evidence supported an inference of negligence as the treadmill had not been inspected for approximately 85 minutes, a period of time which the court found to be unreasonably long. The court held that "circumstantial evidence of the property owner's failure to inspect the premises before an accident is sufficient to infer the risk existed long enough for the property owner, in the exercise of due care, to have discovered and removed it." *Id.*

A few of the other cases cited by Gless and Christensen allow a similar inference to be made; that the condition existed long enough for the employer to have discovered it, assuming a plaintiff can show an inspection was not made within a particular period of time prior to an accident. See, for example, *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 36 P.3d 11 (2011), *Johnson v. Blue Marlin Servs. Of Acadiana, LLC*, 713 F. Supp. 2d 592 (2010), *Lowrey v. LMPS & LMPJ, Inc.,* 313 Mich. App. 500, 885 N.W.2d 638 (2015) (reversed by *Lowrey v. LMPS & LMPJ, Inc.,* 500 Mich. 1, 890 N.W.2d 344 (2016)). The same inferences are not provided for in Nebraska case law. The current case law in Nebraska places the burden of proof on the plaintiff to show the owner or occupier created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition. The Nebraska Supreme Court has stated, as recently as 2016, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. See *Edwards v. Hy-Vee, supra.* Thus, Appellants' argument that constructive notice can be imputed

based upon an alleged failure to inspect within a certain period of time prior to an accident is not supported by Nebraska law, and is without merit.

## CONCLUSION

There was no evidence from which a reasonable finder of fact could infer that Dritley created the dangerous condition, had constructive knowledge of the water on the floor, or failed to exercise reasonable care. The evidence presented was not sufficient to show that the condition was visible and apparent and existed for a sufficient length of time prior to the accident for Dritley to have discovered and remedied it. Therefore, we find the district court did not err in granting summary judgment in favor of Dritley.

AFFIRMED.