IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STARKS V. WAL-MART STORES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARIA M. STARKS AND VIRGIL S. STARKS, APPELLANTS,

V.

WAL-MART STORES, INC., APPELLEE.

Filed July 17, 2018.    No. A-17-801.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Reversed and remanded for further proceedings.

James R. Welsh and Christopher P. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellants.

Heidi A. Guttau-Fox and George E. Martin III, of Baird Holm, L.L.P., for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Maria M. Starks and her husband, Virgil S. Starks, sued Wal-Mart Stores, Inc. (Wal-Mart), in the district court for Douglas County, as a result of Maria's slipping and falling on ice outside of a Wal-Mart store in Omaha, Nebraska. The district court sustained Wal-Mart's motion for summary judgment, and the Starkses appeal. After reviewing the record, we conclude that a genuine issue of material fact exists with respect to Wal-Mart's constructive notice of the condition on its premises, and therefore, the district court erred in granting summary judgment. We reverse, and remand for further proceedings.

- 1 -

BACKGROUND

On January 10, 2014, at approximately 1 p.m., Maria, Virgil, and their grandson were walking on a concrete sidewalk toward a Wal-Mart store. About 40 feet from the store's entrance, Maria slipped and fell on a patch of ice, hitting her head and back on the concrete.

The Starkses brought a premise liability action against Wal-Mart. In their operative complaint, they alleged that Maria slipped and fell on black ice on the sidewalk. They asserted that Wal-Mart either knew or should have known the sidewalk had accumulated black ice, that the accumulated ice was a hazard to Wal-Mart's customers, and that Wal-Mart had a duty to maintain and keep its sidewalk free of hazards. They alleged that Wal-Mart was negligent in failing to inspect and maintain the sidewalk and in failing to warn its customers of the hazard of ice. The Starkses alleged that Wal-Mart was also negligent in failing to prevent the discharge of water from its drain spout onto the sidewalk and failing to construct proper drainage and gutters to prevent the accumulation of water and ice on its entrance sidewalk. The Starkses further alleged that, as a result of Wal-Mart's negligence, Maria suffered permanent injuries, including pain in her lower back, neck, upper thoracic regions, bilateral upper shoulders, left triceps, and ulnar forearm, as well as severe shock to her nervous system, loss of enjoyment of life, aggravation, and inconvenience. Virgil claimed that he suffered loss of consortium as a result of Maria's injuries.

Following discovery, Wal-Mart moved for summary judgment. At the hearing on the summary judgment motion, Wal-Mart argued that there was no evidence to establish how or when the ice that caused Maria to slip was created. The evidence Wal-Mart submitted in support of its motion included excerpts from Maria's and Virgil's depositions; the affidavit of David Northrup, an assistant manager at the Wal-Mart store at the time of the incident; and photographs of the ice patch. The Starkses offered the full transcript of Virgil's deposition.

In her deposition, Maria testified that she, her husband, and their 2-year-old grandson arrived at the Wal-Mart store on January 10, 2014. The weather was cold, windy, and raining "off and on." On her way from their car to the store, Maria had no difficulty walking and observed no ice, salt, or sand in the parking lot or on the sidewalk. But both appeared wet because of the rain, so they walked carefully. Virgil and Maria each held one of their grandson's hands as they approached the store. As they walked along the sidewalk in front of the store, Maria slipped and fell on a patch of ice that had accumulated around a downspout.

Regarding whether she could see the ice before she fell, Maria testified as follows:

Q: Did you see what made you fall before you fell?

A: No. The next thing I know, I'm laying [sic] on the ground.

Q: Okay. Do you know what made you fall?

A: At first I didn't. When we looked back after that, we seen [sic] there's a patch of ice there.

. . . .

Q: After you fell, you determined that it was ice that you slipped on?

A: Yes. There is ice on there, and I told the manager or the supervisor to put [sic] Ice Melt.

Q: Could you see the ice after you fell?

A: Right there, you can't really, because the ice is so, like, clear or what you call that, that you can't tell whether it is ice or water.

Q: How did you determine that it was ice?

A: Because when I looked - when I looked, while I was on the ground, and I [sic] looked really clear, that when we seen [sic] that it's ice.

After her fall, Maria observed a small continuous stream of water pouring from the downspout onto the ice patch. She reported her fall to a manager when they entered the store. She admitted that she had no evidence that Wal-Mart was aware of the ice patch or of how long the ice patch existed. She further explained that she had "no way of knowing" how long the ice had been on the sidewalk.

Virgil testified in his deposition that, like his wife, he did not see the ice on the ground before Maria fell. But after her fall, he observed on the sidewalk where Maria fell a 5- by 5-foot ice patch that was one-half of an inch deep in the thickest spot. Because of the rain, water was slowly running out of a downspout near the ice patch, which he believed caused the ice to form. Based on his experience in construction and snow removal, he opined that an ice patch of that size would require 3 to 4 hours to form.

In his affidavit, Northrup stated that he was an assistant manager at the store where Maria fell on January 10, 2014. He responded to a call that a customer, who he later identified as Maria, had fallen outside his store. He asked her to provide a customer statement, which he attached to his affidavit. The statement was consistent with Maria's and Virgil's deposition testimony. Northrup accompanied Virgil to the area where Maria fell, observed a glaze of black ice on the sidewalk, and noted that the temperature was 33 degrees Fahrenheit at the time of the incident. He took five photographs of the ice and then salted the area. Northrup could not recall any customer or employee issues with that area of the sidewalk before the Starkses' accident.

On April 26, 2017, the district court entered an order granting Wal-Mart's motion. The court noted that the Starkses' did not allege in their amended complaint that Wal-Mart created the condition - the existence of ice on its sidewalk - nor did they have evidence that Wal-Mart created the condition. The court then found the Starkses could not prove that Wal-Mart was aware of, knew about, or reasonably should have known that ice had formed in the area where Maria slipped and fell. The court also found that the Starkses did not have any evidence that Wal-Mart was aware of any defective downspout and failed to repair it. The court relied upon Maria and Virgil's testifimony that they did not see the ice patch before Maria fell in finding that the Starkses could not prove the ice was visible and apparent. Further, because Maria testified that she had no evidence establishing how long the ice existed before she fell, the court found that the Starkses could not prove the ice patch existed for a sufficient length of time to impose constructive notice upon Wal-Mart. The court also found that any claim for alleged construction defect regarding the drainage system was barred by the statute of limitations and statute of repose, which finding is not challenged on appeal and we need not discuss further.

The Starkses appeal.

## ASSIGNMENTS OF ERROR

The Starkses assign, consolidated and restated, that the district court erred in granting Wal-Mart's motion for summary judgment because there was no issue of material fact as to whether Wal-Mart had constructive knowledge of the icy condition on the premises.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pitman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016).

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

### RECORD SUFFICIENT FOR APPELLATE REVIEW

As a preliminary matter, we address Wal-Mart's argument that we should not reach the merits of the Starkses' appeal because they failed to include their amended complaint in the appellate transcript as required by Neb. Ct. R. App. P. § 2-104(1)(a) (2008). Because the Starkses' amended complaint is not in the transcript, Wal-Mart asserts that the Starkses failed to present a record supporting the assigned errors and that, therefore, we should affirm the order of the district court without reviewing the merits.

The Starkses' original complaint is in the transcript, together with Wal-Mart's responsive pleadings and the district court's order. These pleadings adequately address the claims relevant to this appeal, and we can address the Starkses' assigned error based on those documents alone. Further, because the court received a copy of the amended complaint into evidence at the summary judgment hearing, our record does, in fact, contain the Starkses' amended complaint. Therefore, Wal-Mart's argument that the record is insufficient is without merit.

### SUMMARY JUDGMENT

The Starkses assign that the district court erred in granting Wal-Mart's motion for summary judgment because they could not prove that Wal-Mart had constructive notice of the ice patch. Neb. Rev. Stat. § 25-1332 (Reissue 2016) provides in part that a motion for summary judgment shall be granted "if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Barnes v. American Standard Ins. Co. of Wis.*, 297 Neb. 331, 900 N.W.2d 22 (2017). If a genuine issue of fact exists, summary judgment may not properly be entered. *Id.*

A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *American Express Centurion Bank v. Scheer*, 25 Neb. App. 784, ___ N.W.2d ___ (2018). Once the moving party makes a prima facie case, the burden shifts

to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* See, also, *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003).

Owners and occupiers of land are not insurers of their premises, and have a duty only to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. *Id.* In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of a hazardous condition, the Nebraska Supreme Court has refused to allow the jury to speculate as to the possessor's negligence. *Range v. Abbott Sports Complex*, 269 Neb. 281, 691 N.W.2d 525 (2005).

VISIBLE AND APPARENT

First, the Starkses argue that sufficient evidence existed to conclude that the ice patch was visible and apparent. Wal-Mart argues the Starkses admitted the ice patch was not visible and apparent because they did not see it before Maria fell.

Wal-Mart compares the Starkses' case to *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995). In *Cloonan*, a customer slipped and fell on the sidewalk in front of a grocery store. A bystander who helped the customer after her fall testified that there was ice in the parking lot and on a ramp near the sidewalk, but the sidewalk where the customer fell had been either salted or cleared off. The customer testified that the sidewalk upon which she was walking was wet but was "'okay.'" *Id.* at 683, 529 N.W.2d at 763. At no time did she testify that there was ice on the sidewalk where she fell. At the conclusion of the customer's case-in-chief, the store moved for a directed verdict. The district court granted the motion and dismissed the case, finding that there was no proof that the grocery store was negligent. On appeal, the Nebraska Supreme Court affirmed the district court's order, finding that the uncontroverted facts established that there was no visible and apparent condition on the sidewalk, and as such, the grocery store did not have constructive notice of any dangerous condition. The court stated that the grocery store was "not required to see what cannot be seen by other human beings." *Id.*

We find *Cloonan* to be distinguishable from the present case. In *Cloonan*, there was simply no evidence to establish that there was ice on the sidewalk where the customer fell. In fact, the record in *Cloonan* was clear that the sidewalk where the customer fell was "'okay'" and had been "salted and cleared off." *Id.* at 679, 680, 529 N.W.2d at 762. Here, however, both the Starkses and

the store manager confirmed the existence of an ice patch in front of the store. More, unlike the customer's testimony in *Cloonan*, the Starkses' deposition testimony established that Maria fell on that ice patch. Although Maria and Virgil both stated they did not notice the ice patch until after Maria fell, giving the Starkses the benefit of all reasonable inferences, we cannot conclude their statements are an admission that the ice patch was not visible and apparent.

The assistant manager's affidavit and the Starkses' deposition testimony describe a 5- by 5-foot ice patch approximately one-half of an inch deep on the sidewalk in front of the store. Neither the Starkses' deposition testimony nor the assistant manager's affidavit described the ice as invisible. To the contrary, the photographs of the area where Maria slipped depict a visible, fairly thick ice patch. While the Starkses did not notice the ice patch as they walked toward the store, they did see it after Maria fell. Wal-Mart provides no Nebraska case law to support the proposition that a condition is not visible and apparent unless it is actually observed prior to an injury, and we have found none. Thus, viewing the evidence in a light most favorable to the Starkses, we conclude a material issue of fact exists about whether the ice patch was visible and apparent.

LENGTH OF TIME

Next, the Starkses argue that based on the evidence presented at Wal-Mart's summary judgment hearing, a jury could conclude the ice patch existed for a sufficient length of time prior to the accident to permit Wal-Mart to discover and remedy it. Wal-Mart insists, however, that beyond Virgil's speculation about the time required to form the ice patch his wife slipped on, no evidence supports the Starkses' contention that the ice patch existed for a sufficient length of time. Wal-Mart also points to Maria's statements that she had no evidence to support how long the ice patch had existed and that there is "no way of knowing" how long the ice patch existed as an admission that it did not exist for a sufficient length of time to establish constructive notice by Wal-Mart.

Clearly, the record contained no evidence establishing exactly how long the ice patch had been present prior to Maria's fall. But there is no controversy that an ice patch existed, that it was approximately 25 square feet in size, and that it was roughly one-half of an inch thick. Thus, there is some evidence that supports an inference that the ice patch existed long enough for Wal-Mart to discover and remedy it. See *Calvitti v. 40 Garden, LLC*, 155 A.D.3d 1399, 1401, 64 N.Y.S.3d 776, 779 (2017) ("[p]laintiff's description of the thickness and extent of ice on the sidewalk . . . is relevant to the factual question of how long it was present and whether it was visible and apparent such that it would have been discovered upon routine inspection, with sufficient time to remedy it").

Wal-Mart analogizes the evidence here to a variety of slip-and-fall cases involving puddles of water or other liquid spilled on a store's floor, including *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003); *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000); *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995); and several unpublished opinions from this court. In each of the cited cases, the appellate court found that the plaintiff presented no evidence showing how long the water or soap hazard existed. But these cases are factually distinguishable from the present case. A spill of liquid or water on a store floor instantly creates a dangerous condition that might cause a lawful visitor to slip and fall. An ice

patch, on the other hand, does not instantly appear. It is a reasonable inference that an ice patch of the size and thickness described here requires some period of time to form.

We find the present case is similar to *Range v. Abbott Sports Complex*, 269 Neb. 281, 691 N.W.2d 525 (2005). In *Range*, the plaintiff injured his right knee while competing in a soccer match at a sports facility. The plaintiff sued the facility and the league administrating the match, alleging that he stepped in a hole with his right foot, that the hole was a defective condition in the soccer field, and that the defendants would have discovered the hole in the exercise of reasonable care.

At a hearing on the defendants' motion for summary judgment, the court received evidence describing the hole and the referees' protocol for checking the field before matches. The court sustained the defendants' summary judgment motion. The court concluded that the plaintiff could not establish the defendants had constructive knowledge of the hole because he admitted that there was no way of knowing how long the hole had existed.

On appeal, the Nebraska Supreme Court reversed the grant of summary judgment, finding that a genuine issue of material fact existed as to whether the defendants had constructive knowledge of the hole in the field. The plaintiff described the hole as somewhat round, 4 to 5 inches in diameter, with no observable loose dirt around the perimeter. According to the plaintiff, it appeared the hole had been made by a small burrowing animal. From these facts, the court determined that the plaintiff was entitled to an inference that the hole did not come into existence during the match. The court specifically distinguished cases involving spills of water, stating that, unlike a hole, a puddle of water can form "very quickly." Because there is no way to determine how long a puddle has been on the floor from its description alone, its description cannot support an inference that it existed for any period of time. *Id.* at 288, 691 N.W.2d at 530.

An ice patch on a sidewalk, like a hole in a soccer field, cannot form in an instant. Here, the description of the ice patch was evidence that a jury could use to infer how long it existed prior to Maria's fall. Despite Maria's statement that she did not know how long the ice patch had existed before her fall, the description of the ice patch supports a reasonable inference that it existed long enough for Wal-Mart to discover and remedy it.

Viewing the evidence in the light most favorable to the Starkses and giving them the benefit of all reasonable inferences deducible from the evidence, we find that a genuine issue of material fact existed with regard to the length of time the ice patch was in existence and whether Wal-Mart had constructive knowledge of it.

## CONCLUSION

Viewing the evidence in a light most favorable to the Starkses, we find a genuine issue of material fact existed as to whether Wal-Mart had constructive knowledge of the ice on its sidewalk. Therefore, we reverse the district court's order granting summary judgment in favor of Wal-Mart and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.